UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HILDA L. SOLIS, Secretary of the United States Department of Labor,<br><br>    Plaintiff,<br><br> v.<br><br>MATTHEW D. HUTCHESON, HUTCHESON WALKER ADVISORS LLC, GREEN VALLEY HOLDINGS LLC, and the RETIREMENT SECURITY PLAN AND TRUST, f/k/a PENSION LIQUIDITY PLAN AND TRUST.<br><br>    Defendants. | Civil Action No. 1:12-cv-236-EJL<br><br>**PRELIMINARY INJUNCTION** |

   On May 15, 2012, plaintiff, Hilda L. Solis, Secretary of the United States Department of Labor (the "Secretary"), filed a complaint in this action (Dkt. 1) and, at the same time, a motion for a temporary restraining order and preliminary injunction removing defendants Matthew D. Hutcheson ("Hutcheson") and Hutcheson Walker Advisors LLC ("HWA") as fiduciaries of the Retirement Security Plan and Trust, f/k/a Pension Liquidity Plan and Trust ("RSPT") and the plans for which RSPT holds ERISA-covered assets (the "Plans") and appointing Jeanne B. Bryant of Receivership Management, Inc. as independent fiduciary to RSPT and the Plans.  (Dkt. 2.)

On May 16, 2012, the Court granted the Secretary's motion for a temporary restraining and took the motion for preliminary injunction under advisement. (Dkt. 6.) In that same order defendants were directed to file responsive briefs on or before June 5, 2012. Id. No responsive briefs have been filed to date. The Court notes Hutcheson did file a pro se declaration on June 11, 2012 (Dkt. 15) indicating he had not been served as represented by Plaintiff but acknowledged he did receive a copy of the Court's Order of May 30, 2012 (Dkt. 9) on May 31, 2012 which provided notice to Hutcheson that he had until June 5, 2012 to file a response to the motion for preliminary injunction.

Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). Based on the following findings of facts and conclusions of law, the Court finds as follows:

## I.    **Preliminary Injunction Standard**:

Preliminary injunctions are designed to preserve the status quo pending the ultimate outcome of litigation. They are governed by Federal Rule of Civil Procedure 65(b) which requires the moving party to show  "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. . . ."  Under Rule 65(b) and Ninth Circuit case law, a plaintiff may obtain a preliminary injunction only where he or she can "*demonstrate* immediate threatened injury."  *See, e.g., Caribbean Marine*

*Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Goldie's Bookstore Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).

Fed. R. Civ. P. 65(b) discusses the procedure to be followed on an application for a preliminary injunction. A preliminary injunction may issue even though a plaintiff's right to permanent injunctive relief is not certain. The grant or denial of a preliminary injunction is a matter of the court's discretion exercised in conjunction with the principles of equity. *See: Inland Steel v. United States,* 306 U.S. 153 (1939); *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S. Ct. 229, 85 L.Ed. 189 (1940); and *Stanley v. Univ. of Southern California,* 13 F.3d 1313 (9th Cir. 1994).

While courts are given considerable discretion in deciding whether injunctive relief should be issued, injunctive relief is not obtained as a matter of right and it is considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See:  Sampson v. Murray,* 415 U.S. 61 (1974)*; Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.,* 363 U.S. 528 (1960); and *Stanley v. Univ. of Southern California,* 13 F.3d 1313 (9th Cir. 1994).

In each case, the district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).  In *Winter v.*

*Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008), the United States Supreme Court held that, in order to be entitled to a preliminary injunction, the moving party must demonstrate (1) likelihood of success on the merits; (2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. 555 U.S. at 20; *see also, Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

Prior to the Supreme Court's ruling in *Winter*, the Ninth Circuit applied alternative tests in determining whether a preliminary injunction should be granted: "[a] preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).  The Ninth Circuit reasoned that "[t]hese two options represent extremes on a single continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Id.*  In *Winter*, the Supreme Court expressly disapproved the "possibility of harm standard," stating that "the Ninth Circuit's 'possibility' standard is too lenient . . . [and the proper] standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22 (emphasis in original).  This left open the question, however, of whether the remaining aspects of the Ninth Circuit's sliding scale test for preliminary injunctions remained good law.

The Ninth Circuit clarified the issue in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). In that case, the Court of Appeals held that although *Winter* had raised the bar on what must be shown on the irreparable harm prong to justify a preliminary injunction, it did not alter the district court's authority to balance the elements of the preliminary injunction test, so long as a certain threshold showing is made on each factor. 632 F.3d at 1134-35. The court in *Wild Rockies* stated that "the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test." *Id.* at 1135. In other words, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

## II.    Findings of Fact:

Based on the record in this case, the Court finds as follows:

1.      This Court has jurisdiction and venue is proper. Hutcheson resides in Idaho. ERISA § 502(e)(1) & (2), 29 U.S.C. §§ 1132(e)(1) & (2).

2.      On May 15, 2012, Plaintiff Hilda L. Solis, Secretary of the United States Department of Labor, filed the Complaint in this case alleging claims for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (Dkt. 1.) The claims relate to Hutcheson's alleged wrongful transfer of $3.276 million dollars of ERISA-covered plan assets to accounts controlled by him in late 2010 and subsequent use of those funds for his personal benefit. (Dkt. 1.) At the time of the transfer, the Complaint states, Hutcheson was a fiduciary of the ERISA-covered plans

whose assets are held by an entity known as the Retirement Security Plan and Trust, f/k/a

Pension Liquidity Plan and Trust ("RSPT"). The transfer in question in the Complaint

was made from RSPT. As a result of the transfer, the Complaint alleges, there appears to

be insufficient funds in RSPT to provide all of the benefits due to the participants and

beneficiary of the plans for which RSPT holds ERISA-covered plan assets. Plaintiff now

seeks injunctive relief removing Defendants Hutcheson and HWA as fiduciaries of the

Plans and appointing an independent fiduciary over RSPT and the Plans.

3.     At all times relevant, RSPT has been an entity entrusted with discretionary

authority and control over assets of employee benefit plans (as that term is defined by

ERISA § 3(3), 29 U.S.C. § 1002(3) and over the administration of those plans.

Defendants Hutcheson and HWA exercised authority and control over the ERISA-

covered assets entrusted to RSPT and over the management of the plans for which RSPT

held assets.  Defendants Hutcheson and HWA also had discretionary authority and

responsibility in the administration of those plans.  Thus, Defendants Hutcheson and

HWA were each a fiduciary of each of the plans to which those assets belong pursuant to

ERISA § 3(21), 29 U.S.C. § 1002(21).

4.      Hutcheson and his wife, Annette Hutcheson, are majority shareholders in

Green Valley Holdings, LLC ("GVH"), an Idaho limited liability company organized on

August 5, 2010.  GVH is thus a party-in-interest with respect to the plans for which RSPT

holds and manages assets pursuant to ERISA § 3(14), 29 U.S.C. § 1002(14).

5.      Plaintiff has filed a Declaration of J. Michael Ebbesen, Senior Investigator for the Employee Benefits Security Administration of the United States Department of Labor. (Dkt. 2, Ex. 2.) Mr. Ebbesen has conducted an investigation concerning the alleged misuse of the $3,276,000 in funds from the RSPT trust by Hutcheson. This investigation purports to show that Mr. Hutcheson directed for the transfer of funds in order to purchase a bank note (the "PCB Note")[1], which was secured by a golf course at Tamarack, for the benefit of Green Valley Holdings, LLC. (Dkt. 2, Ex. 2.) The PCB Note was later pledged as collateral to another individual for a loan to pay Hutcheson's legal bills.  Hutcheson defaulted on the loan and, as a result, may have lost title to the PCB Note. Mr. Ebbesen contends that Hutcheson concealed pertinent details about the transactions concerning the PCB Note. The Declaration goes on to detail the commencement of the Government's involvement and knowledge concerning the transfer of funds by  Hutcheson including the filing of Form 5500 and the findings of the Independent Auditor's Report finding of a "Prohibited Transaction." (Dkt. 2, Ex. 2 at ¶¶ 28-32.) Mr. Ebbesen concludes with the statement that HWA has continued to make distributions from RSPT knowing that $3,276,000 in assets are missing. (Dkt. 2, Ex. 2 at ¶ 33.) Attached to Mr. Ebbesen's Declaration are several Exhibits that support the conclusions made therein. (Dkt. 2-3, 5.)[2]

---

[1] It appears "PCB" refers to Pacific Continental Bank, located in Eugene, Oregon. (Dkt. 2, Ex. 2 at ¶ 30.)

[2] The Exhibits are appropriately filed under seal so the Court has not discussed the details of their content in this Order. The Court has, however, reviewed the documents in relation to the claims made in Mr. Ebbesen's Declaration and the claims raised in the Complaint in reaching its decision on this Application for Preliminary Injunction.

6.      As a result of the alleged prohibited transaction, there are insufficient plan assets in RSPT to provide all of the benefits due to all of the participants and beneficiaries of ERISA-covered plans whose assets are held by RSPT.

7. Based on the foregoing and without any evidence being submitted by Defendants to counter Mr. Ebbesen's Declaration, the Court finds the Plaintiff has demonstrated the type of immediate and irreparable injury necessitating entry of a preliminary injunction. Plaintiff has clearly shown by way of Mr. Ebbesen's Declaration and the attachments thereto, specific facts evidencing a real threat of immediate and irreparable injury, loss, or damage will result if the preliminary injunciton is not issued. Though a great deal of funds have already been transferred from the particular funds at issue, there is a danger that the remaining ERISA-covered assets could be further diminished by these Defendants. Accordingly, the Court finds grounds have been shown upon which to grant the preliminary injunction.

## III.      Procedural Background:

On May 15, 2012, the Secretary filed a complaint in this action.  (Dkt 1.)  She concurrently filed a motion for a temporary restraining order and preliminary injunction, seeking removal of defendants Hutcheson and HWA as fiduciaries of RSPT and the Plans.  The Secretary also asked this Court to appoint Jeanne B. Bryant of Receivership Management, Inc. as independent fiduciary to RSPT and the Plans.  (Dkt. 2.)

On May 16, 2012, the Court granted the Secretary's motion for a temporary restraining and took the motion for preliminary injunction under advisement.  (Dkt. 6.)  In

that same order defendants were directed to file responsive briefs on or before June 5, 2012.  Id.

On May 21, 2012, the Secretary filed an Expedited Motion to Extend the Temporary Restraining Order and to Expedite Briefing on the Application for Preliminary Injunction.  (Dkt. 7.)  In her application, the Secretary asked the Court to extend the temporary restraining order in effect (Dkt. 6) beyond the fourteen (14) days provided in Fed. R. Civ. P. 65, until briefing on the motion for preliminary injunction was complete and the Court had the opportunity to rule on the motion for preliminary injunction.  In the same motion, the Secretary requested that the Court expedite the Defendants' response to the Secretary's request to extend the temporary restraining order.  Id.

On May 23, 2012, the Court issued an Order expediting the briefing on the motion to extend the temporary restraining order.  (Dkt. 8.)  Defendants were ordered to respond to the Secretary's motion to extend the temporary restraining order no later than 5:00 p.m. on May 29, 2012.  Although Defendants have been properly served with copies of these documents, they have failed to respond.  See Hartman Declaration (Dkt. 14).

On May 30, 2012, the Court granted the Secretary's motion to expedite briefing on the Application for Preliminary Injunction pursuant to Dist. Idaho Loc. Civ. R. 7.1(e)(2). (Dkt. 9.)  In that Order, Defendants again were instructed to file their response to the Secretary's Application for Preliminary Injunction on or before June 5, 2012, as follows:

> Defendants are to file their response brief to this Application on or before **June 5, 2012**.  The Court revises the date Plaintiff's reply is due to June 11, 2012.  After reviewing the briefing on the Application, the Court will determine whether a

hearing date is necessary and, if so, contact the parties to schedule a hearing on the Application for Preliminary Injunction to be scheduled no later than June 13, 2012.

(Emphasis added.) Defendants have failed to file or serve any response to the Secretary's Application for Preliminary Injunction. Pursuant to Dist. Idaho Loc. Civ. R. 7.1(e)(2), the Court may deem the failure to file a response as consent by the non-moving party to the granting of the motion.

## IV.     Conclusions of Law.

The Secretary is entitled to preliminary injunctive relief because she has established all of the grounds necessary for the imposition of such relief here, including: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in favor of injunctive relief; and (4) that an injunction is in the public interest. *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1155 (9th Cir. 2011) (citing *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1104 (9th Cir. 2010)).

### A. <u>Likelihood of Success on the Merits</u>

ERISA is a comprehensive and remedial statute designed to promote and protect the interests of participants and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S 359, 361-62 (1980). Courts have repeatedly found that, under ERISA's broad remedial provisions, injunctive relief, such as that sought in this action, is

appropriate. *See, e.g., Donovan v. Mazzola*, 716 F.2d 1226, 1238-39 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984).

In passing ERISA, Congress declared a national public interest in protecting "the continued well-being and security of millions of employees and their dependents . . . directly affected by these plans." ERISA § 2(a), 29 U.S.C. § 1001(a); *Johnson v. Couturier*, 573 F.3d 1067, 1082 (9th Cir. 2009); *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1423 (11th Cir. 1998). In furtherance of this goal, "Congress intended to make available the full range of legal and equitable remedies in cases of ERISA violations." *Whitfield v. Tomasso*, 682 F. Supp. 1287, 1306 (E.D.N.Y. 1988) (citing H.R. Rep. No. 93-127H, *reprinted in* 3 U.S. Code Cong. & Admin.News 4639, 4838, 4871 (1974)); *accord South Carolina Nat'l Bank*, 140 F.3d at 1423 ("It remains the intent of Congress that the courts use their power to fashion legal and equitable remedies that not only protect participants and beneficiaries but deter violations of the law as well").

The instant action, the Application for Preliminary Injunction falls squarely within ERISA's statutory charge to the Secretary and are in furtherance of the Secretary's goal of protecting the participants and beneficiaries of the employee benefit plans subject to this action. In addition to providing for the removal of existing plan fiduciaries, such relief also includes the appointment of an independent fiduciary to carry out the proper administration and management of benefit plans. *Mazzola*, 716 F.2d at 1238-39; *Solis v. Vigilance, Inc.*, No. C-08-05083, 2009 WL 2031767, at *3 (N.D. Cal. July 9, 2009); *Chao v. Azon Employees Ret. Plan*, No. 3:06-CV-1006, 2007 WL 4287784, at *4 (N.D.N.Y.

Dec. 7, 2007); *Chao v. Zoltrix,* No. C-07-00610, 2007 WL 2990429, at *3 (N.D. Cal. Oct. 11, 2007).

One of the remedies expressly enumerated in ERISA is removal of a breaching fiduciary.  ERISA § 409(a), 29 U.S.C. § 1109(a); *see Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) (fiduciary subject to such other equitable or remedial relief as the court may deem appropriate including removal of the fiduciary).  A permanent injunction against serving as a fiduciary is also an appropriate remedy under ERISA.  *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992), *cert. denied*, 506 U.S. 1054 (1993) (permanent injunction imposed on fiduciary who demonstrated a "fundamental misunderstanding" of ERISA). In an action brought to enforce a remedial federal statute that provides a court with broad jurisdiction to fashion relief, an injunction freezing assets, appointing an independent fiduciary, and allowing the independent fiduciary to administer the plan is particularly appropriate to ensure that participants suffer no additional losses due to misconduct. *Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978).

It is likely that the Secretary will be successful on the merits because, although there has been no formal discovery, the factual record in this matter without any dispute by Defendants as to material facts supports of finding that the Plans are at risk of sustaining devastating losses if the Defendants continue as fiduciaries of the Plans while the allegations of improper conduct is investigated.  The Court finds it is not in the best interests of the Plans to allow Hutcheson to retain control over plan assets pending resolution of criminal charges in the District of Idaho.  The Secretary has established her

likelihood of success on the merits of a claim regarding breaches of fiduciary duties by

Hutcheson and as a result of the reported prohibited transaction, there are insufficient

assets in RSPT to provide all the benefits due to participants and beneficiaries of ERISA-

covered plans whose assets are held by RSPT.  Therefore, whatever assets remain need to

be protected by an independent fiduciary.

### B.  Irreparable Harm Is Likely in the Absence of Immediate Relief

Injunctive relief is available "if plaintiffs demonstrate that irreparable injury is

likely in the absence of an injunction." *Couturier*, 572 F.3d at 1081 (internal citation

omitted).  Here, it is clear that such injury is likely absent injunctive relief.

If the allegations against Defendants Hutcheson and HWA are found to be true, the

fiduciaries would be subject to removal under ERISA. Therefore, the risk of irreparable

harm to the ERISA plans has been demonstrated.

### C. The Balance of the Equities Tips in Favor of Injunctive Relief

The balance of equities favors an award of injunctive relief for the Secretary in this

matter.  Recognizing the public interest in protecting against future harm to ERISA plans,

courts have rejected arguments that "ERISA fiduciaries and their associates must be

allowed to loot a second pension plan before an injunction may be issued." *Beck v.

Levering*, 947 F.2d 639, 641 (2d Cir. 1991); *Solis v. Couturier*, 2009 WL 1748724 at *7.

"Accordingly, injunctive relief is available including an injunction to prohibit a party

from having further dealings with ERISA-covered plans." *Tomasso*, 682 F. Supp. at

1306; *accord Beck*, 947 F.2d at 641.

Here, the harm that would likely occur without an injunction "would leave . . .
participants without the benefits whose security ERISA strives above all else to protect."
*Couturier*, 572 F.3d at 1081.  The participants' interests in the loyal and prudent
management of their pension assets far outweighs any legitimate interest that Hutcheson
may assert to continued access to the funds.  In light of not only the conduct in which
Hutcheson is alleged to have engaged, but the source of the funds that he is alleged to
have abused, participants' assets are at significant risk of further harm.  Thus, the balance
of the equities favors preliminary relief.

### D. <u>An Injunction Is in the Public Interest</u>

Serious allegations exist that tend to support the Secretary's conclusion that
Defendants Hutcheson and HWA have violated ERISA § 404, and Hutcheson has further
violated the prohibited transaction and self-dealing rules in ERISA §§ 406(a) & (b).  It is
thus in the public interest for Defendants Hutcheson and HWA to be prohibited from
exercising any further authority or control over any ERISA-covered assets at this time
and until the criminal proceedings are resolved.  Any public concern that might extend to
somebody who has already admitted in the Form 5500 that the transaction violated
ERISA (and who has been indicted for alleged criminal behavior in connection with the
same transaction) "is far outweighed by the interests that ERISA protects."  *Couturier*,
572 F.3d at 1081.

PRELIMINARY INJUNCTION - 14

**ORDER**

Based upon the foregoing and the record in this case, and for good cause shown, the Court  **GRANTS** the Secretary's Application for a Preliminary Injunction (Dkt. 2).

**THEREFORE IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.  Hutcheson and HWA are removed as fiduciaries, service providers, trustees, sponsors, administrators and from all other positions of authority or control over RSPT and the Plans and are enjoined from acting as fiduciaries on behalf of RSPT and the Plans, from exercising any authority or control with respect to RSPT and the Plans.

2.  Jeanne B. Bryant of Receivership Management, Inc. is hereby appointed as the independent fiduciary to RSPT (the "Independent Fiduciary").  The Independent Fiduciary shall also serve as the successor trustee and plan administrator of RSPT and the Plans and shall have fiduciary authority and control over RSPT's and the Plans' assets. The Independent Fiduciary shall have the exclusive authority to exercise all powers previously exercised or held by HWA and Hutcheson under the terms of the documents governing RSPT and the Plans. Notwithstanding any provision herein to the contrary, the fiduciary responsibility for determining the advisability of the Plans' continued holding or sale of any qualifying employer securities or for establishing the fair market value thereof for any purpose shall remain with the individual sponsors of the Plans, as provided in their respective letters of understanding with RSPT.

3.  Hutcheson and HWA, and their fiduciaries, agents, employees, service providers, depositories, banks, accountants, attorneys, and any other party acting in

concert with them or at their direction, are enjoined to preserve, secure, and produce to

the Independent Fiduciary upon the Independent Fiduciary's request, all books, records,

and documents that relate to the administration and operation of RSPT, the Plans, and the

ERISA-covered assets therein, and to comply in good faith with the terms of this Order.

4.  Hutcheson and HWA, and their fiduciaries, agents, employees, service

providers, depositories, banks, accountants, attorneys, and any other party acting in

concert with them or at their direction, are enjoined from expending, transferring,

hypothecating, secreting, or otherwise obligating or disposing of any assets of RSPT's or

the Plans' and from destroying, altering, or secreting any of RSPT's or the Plans' books,

records, or documents.

5.  Hutcheson and HWA shall require their officers, employees, attorneys,

agents, advisers, and representatives, and all persons who serve in any capacity that

involves decision making authority for them, to act and discharge their duties in full

compliance with the terms of this Order and shall require that they not take any action in

the discharge of such duties that is inconsistent with the terms of this Judgment and

Order.  Hutcheson and HWA shall also require their officers, employees, attorneys,

agents, advisers, representatives, and all persons who serve in any capacity that involves

decision making authority for them, as a condition of maintaining their relationships with

them, to cooperate fully with the Independent Fiduciary in the performance of the

Independent Fiduciary's duties and responsibilities.  In furtherance thereof, Hutcheson

and HWA shall provide a copy of this Order to all of their officers, employees, attorneys,

agents, advisers, representatives and all persons who serve in any capacity that involves decision making authority for them, within ten (10) days after the entry of this Order.

      6.  The Independent Fiduciary shall have exclusive responsibility and authority to control and manage all assets of RSPT's and the Plans' and all assets within RSPT's and the Plans' custody or control, including, but not limited to:

      a.      The authority to exercise all fiduciary responsibilities relating to RSPT and the Plans, including, but not limited to, the responsibility to act as the administrator of RSPT and the Plans;

      b.      Any and all authority given to trustees under the terms of the documents governing RSPT and the Plans;

      c.      Authority to amend the documents governing RSPT and the Plans;

      d.      The exclusive authority to appoint, replace and remove such administrators, trustees, attorneys, agents, and service providers as the Independent Fiduciary shall, in the Independent Fiduciary's sole discretion, determine are necessary to aid the Independent Fiduciary in the exercise of the Independent Fiduciary's powers, duties, and responsibilities to RSPT and the Plans;

      e.      Authority to wind down RPST and the Plans and make final distributions to participants and beneficiaries; and,

      f.      Except as provided herein, the authority to delegate to such administrators, trustees, attorneys, agents, and service providers such

fiduciary responsibilities as the Independent Fiduciary shall determine appropriate.  The Independent Fiduciary may not, however, delegate the authority to appoint, replace and remove such administrators, trustees, attorneys, agents, and service providers or the responsibility to monitor the activities of RSPT's and the Plans' administrators, trustees, attorneys, agents, and service providers.

7.  The Independent Fiduciary shall have full access to all documents, books, records, personnel, files, and information of whatever type or description in the possession, custody, or control of RSPT and the Plans.  In addition, the Independent Fiduciary shall have full access to all documents, books, records, personnel, files and information of whatever type or description relating to RSPT and the Plans in the possession or control of Hutcheson or HWA, or their fiduciaries, agents, employees, service providers, depositories, banks, accountants, attorneys, and any other party acting in concert with or at their direction.  HWA shall deliver such records as the Independent Fiduciary may request within five (5) business days after demand therefore or within such other time as the HWA and the Independent Fiduciary may agree.

8.  The Independent Fiduciary shall obtain a bond that conforms to the requirements of ERISA section 412, 29 U.S.C. § 1112.

9.  The Independent Fiduciary shall not be discharged or terminated during the duration of this Order except by leave of Court upon application by either the Secretary or the Independent Fiduciary.  Upon termination, discharge, or resignation of

the Independent Fiduciary during the term of this Order, the Secretary shall recommend a successor Independent Fiduciary for appointment by the Court.  Recommendations for a successor Independent Fiduciary shall be made by the Secretary within such periods as the Court, by further order, may provide.

10.  Subject to the terms of this Order and ERISA, the Independent Fiduciary shall delegate administrative activities to individuals or entities with the capability to perform those activities in compliance with her fiduciary obligations under ERISA.

11.  Concerning any activities which the Independent Fiduciary performs, the Independent Fiduciary shall be free to consult with the Secretary, the Internal Revenue Service, other federal, state, and local governmental agencies, and any other person or entity that the Independent Fiduciary believes appropriate in the conduct of the Independent Fiduciary's duties, including attorneys, accountants, actuaries, and other service providers.

12.  The Independent Fiduciary shall cooperate fully with the Secretary in the exercise of the Secretary's enforcement responsibilities under ERISA, *inter alia*, by promptly providing such documents, information and persons under the Independent Fiduciary's control as the Secretary from time to time may request.  Nothing herein shall be construed to limit the rights the Secretary otherwise enjoys of access to documents, information or persons or to waive or restrict the exercise by the Independent Fiduciary and any individual of his or her constitutional rights.

13.  The payment of administrative expenses and all fees to the Independent Fiduciary and the Independent Fiduciary's assistants, attorneys, accountants, actuaries and other necessary service providers are to be considered priority administrative expenses of RSPT's and the Plans' and its related entities, superior to any other class of expense or obligation of RSPT's and the Plans' or its related entities and the Independent Fiduciary's second priority is to be the payment of legitimate claims.  Hutcheson and HWA shall be responsible for repaying RSPT and the Plans for such funds expended.  On a quarterly basis, the Independent Fiduciary shall provide the Secretary, Hutcheson and HWA with a report of all significant actions taken and all funds expended

14.  The Independent Fiduciary shall be entitled to continue to collect all fees from the RSPT Plans' sponsors as such sponsors were paying to Hutcheson and HWA prior to their removal as RSPT Plans fiduciaries, or such other amounts that Ms. Bryant may determine as proper under the RSPT Plans' documents. Any fees the Independent Fiduciary collects from the sponsors shall offset any fees and expenses chargeable to the RSPT Plans.

15.  The terms of the documents governing RSPT and the Plans are hereby amended to include the terms of this Order.  This Judgment and Order shall, for the term of this Judgment and Order, supersede any and all other provisions in any documents governing RSPT and the Plans that are inconsistent with the terms of this Judgment and Order including, but not limited to, any plan documents, trust agreements and/or shareholder agreements.

16.  The freeze described in paragraph 15 above shall remain in effect until the Independent Fiduciary determines that all of the actions described in paragraph 15 have been completed to the extent they are deemed necessary and they are reasonably possible under the circumstances.

17.  The reasonable expenses incurred in the administration of RSPT and the Plans, including but not limited to the reasonable compensation of attorneys, accountants, consultants or others retained in connection with the administration of RSPT and the Plans and their termination, shall, in such manner as the Independent Fiduciary deems appropriate, be charged to and paid by RSPT and the Plans and allocated among participants.  Hutcheson and HWA shall be responsible for repaying RSPT and the Plans for such fees and expenses.  Such fees and expenses shall be subject to prior review and approval of the Court.

18.  RSPT and the Plans are authorized and directed to pay the reasonable compensation, fees and expenses of Ms. Bryant and such persons and firms retained by the Independent Fiduciary in the performance of services to or for RSPT and the Plans subject to the following procedures:

a.  Before causing RSPT and the Plans to pay compensation, fees or expenses to the Independent Fiduciary or any person or firms retained by the Independent Fiduciary, the Independent Fiduciary shall provide written notice of such compensation, fees or expenses, by filing a fee notice with this Court and by serving a copy to the Secretary;

b.    The fee notice shall include a detailed invoice itemizing the compensation, fees and expense to be paid by RSPT and the Plans;

c.    The Independent Fiduciary shall not be required to file, service or otherwise deliver the Fee Notice to any person or person other than the Court, the Secretary, Hutcheson and HWA.

d.    If within fifteen (15) days after filing of a fee notice, no objection to the fee notice or payment by RSPT and the Plans of the compensation, fees, or expenses described therein is filed with this Court, such compensation, fees, and expenses shall be deemed reasonable expenses of the RSPT's and the Plans' and shall be paid by the RSPT and the Plans without further action or approval of this Court;

e.    If an objection to a fee notice or payment by RSPT and the Plans of the compensation, fees, or expenses described therein is filed with this Court, within fifteen (15) days after filing of such fee notice, the Court shall hold a hearing on the matter and the compensation, fees, expenses described in the fee notice shall be paid by RSPT and the Plans only to the extent approved by the Court; and

f.    This paragraph 18 shall not apply to fees and expenses of the funds custodian or the third party administrator generated in the course of its performance under its pre-petition service agreements.

19.  Nothing in this and Order shall be construed:

PRELIMINARY INJUNCTION - 22

a.  To limit the powers and responsibilities of any officer or employee of the United States under ERISA or any other law, or

b.  To relieve RSPT or the Plans, or any of their administrators, fiduciaries, officers, trustees, custodians, attorneys, agents, employees, advisers, providers of goods or services, consultants, representatives in any capacity, or persons who serve in any capacity that involves decision making authority or custody or control of the moneys, funds or assets of RSPT's or the Plans' of any duty, responsibility, or liability under ERISA or any other law.

20.  This Court shall retain jurisdiction over the parties and subject matter of this action for the purpose of enforcing this Order and resolving the remaining claims.

21.  Provisions of this Order requiring notice to the Independent Fiduciary, the Secretary, Hutcheson, GVH, and HWA shall be satisfied by delivering it in writing as follows:

To the Independent Fiduciary:

Jeanne B. Bryant
Receivership Management, Inc.
P. O. Box 2307
Brentwood, TN 37024
(615) 370-0051
Fax (615) 373-4336

To the Secretary:

      (If by mail)
      United States Department of Labor
      Office of the Solicitor
      Plan Benefits Security Division
      P.O. Box 1914
      Washington, D.C. 20013

      (If by delivery)
      United States Department of Labor
      Office of the Solicitor
      Plan Benefits Security Division
      200 Constitution Ave., N.W.
      Room N-4611
      Washington, D.C. 20210

To Hutcheson and GVH:

      Matthew D. Hutcheson
      39 Pinnacle Court
      Donnelly, ID  83615

To HWA:

      Monty W. Walker
      c/o R. Bradford Huss
      Trucker Huss, APC
      One Embarcadero Center
      San Francisco, CA 94111

The parties to this and Order may, as they deem necessary, change the designation of persons to receive notice on their behalf by filing with the Court notification of such change and serving a copy thereof on the other party or parties to this  and Order.

      22.    This and Order may be amended upon application by the Secretary or the Independent Fiduciary to this Court.

SO ORDERED.

DATED:  **June 13, 2012**

Honorable Edward J. Lodge
U. S. District Judge